# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA - DUBLIN DIVISION

| | |
|---|---|
| HAROLD LOWERY *and* KAY LOWERY<br><br>*plaintiffs,*<br><br>–v–<br><br>INTERNATIONAL PORTFOLIO, INC., FREDERICK J. HANNA & ASSOCIATES, P.C., *and* ALTAMAHA BANK & TRUST COMPANY,<br><br>*defendants.* | CIVIL ACTION FILE NUMBER<br>3:11-cv-00024-DHB-WLB |

### PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW by counsel plaintiffs to sur-reply as follows to defendants' reply to plaintiffs' response to defendants' motion for summary judgment:

### THE LEGAL STANDARDS

The Georgia legal environment differs from legal environments in other states; and, *consumer* legal standards differ from *commercial* legal standards. In Georgia, as a foundational, constitutional, and jurisdictional matter, the *entire* "process of garnishment" – not merely its result – applies only, solely, and

exclusively, *in rem*, to property belonging to a judgment debtor.[1] OCGA 18-4-20. Thus, commencement of garnishment process against property not belonging to a judgment debtor violates Georgia's garnishment statute in significant fundamental, constitutional, and jurisdictional ways.[2] Moreover, in Georgia, a joint bank account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent. OCGA 7-1-812. Creditors and debt collectors in Georgia who ignore these laws when garnishing property belonging to *consumers* will violate them at their peril.

The FDCPA, 15 USC 1692*f*(1), is a strict liability *consumer* protection statute.[3] To establish a violation neither allegation nor proof of a debt collector's intent is required: if an agreement does not authorize, nor a law permit, the

---

[1] Plaintiffs do not waive their contention that defendants violated Georgia's garnishment regime by failing to afford plaintiffs notices as required both by the statute and constitutional due process and equal protection standards.

[2] In balancing interests, therefore, the interests of the innocent stranger to the judgment to peaceful enjoyment of his property should always be placed outside, above, and beyond – and not against – the competing interests of government, creditor, and debtor.

[3] *Randolph v IMBS Inc*, 368 F3$^d$ 726 (CA7 2004).

collection – or attempted collection – of a property to pay a *consumer* debt, then the debt collector who attempts to, or does collect it, commits, under the "unsophisticated consumer" standard,[4] an unfair or unconscionable consumer debt collection practice. Commencement of garnishment process is an *in rem* attempt to collect a property to pay a debt. Even though 15 USC 1692*f* does not require intent, OCGA 1-3-6 imputes knowledge of the law to defendants and the natural results of an action are by law deemed intended by defendants.[5]

Thus, when attempting by garnishment to collect *consumer* debts in Georgia, debt collectors and banks face legal and constitutional constraints they may not face in other states or when collecting commercial and other non-consumer debts.[6] In Georgia, *consumer* debt collectors who actually know in advance that a garnishment may touch property that does not belong to their judgment debtor, or, who do not inform themselves about property ownership

---

[4]*LeBlanc v Unifund CCR Partners*, 601 F3$^d$ 1185 (CA11 2010).

[5]*Clark v Huntsville City Bd of Educ*, 717 F2d 525 (CA11 1983); *Rabun v Kimberly-Clark Corp*, 678 F2$^d$ 1053 (CA11 1982).

[6]The FDCPA does not apply to commercial debt collection. Defendants confuse commercial debt collection standards with consumer debt collection standards: this court should not commit the same mistake.

before initiating a garnishment process, commit an unfair or unconscionable debt collection practice when the garnishment process touches property that does not belong to the judgment debtor, since the garnishment regime does not apply, *ab initio*, to such property and since principles of due process and equal protection in our federal and state constitutions protect property belonging to strangers to the judgment.

## ARGUMENT AND AUTHORITIES

Defendants by garnishment attempted to collect Harold's money to pay Kay's debt – in violation of constitutional and consumer rights the plaintiffs here assert[7] – rights not raised in either *Akridge v Silva*, 298 Ga 862 (2009), or *Lamb v Thalimer Enterprises Inc*, 193 Ga App 70 (1989). Neither Akridge nor Lamb asked their courts to consider Georgia's garnishment regime against *consumer and constitutional* standards. Both *Akridge* and *Lamb* appear to involve collection of

---

[7]Plaintiffs do not waive, but adopt here the arguments and authorities in their other briefs and will not repeat them here. To the extent that Georgia's garnishment regime authorizes, without notice to its owner, attachment of property that does not belong to a judgment debtor, to that extent the garnishment regime violates both federal and state constitutional due process and equal protection standards. *C-Staff Inc v Liberty Mut Ins Co*, 275 Ga 624, 571 SE2$^d$ 383(2002); *Endicott-Johnson Corp v Encyclopedia Press Inc*, 266 US 285 (1924).

commercial debts - or at least litigants who failed to draw a distinction between consumer and commercial debt collection.

*Hogue* did not and does not impose on consumers any requirement to hire lawyers or to send affidavits to debt collectors in order to protect their property from unconstitutional seizure, or from unfair or unconscionable debt collection practices already prohibited by 1692*f*(1) and other laws. See 494 F Supp $2^d$ 1043 (SD Iowa 2007). Rather, *Hogue* imposed duties on Iowa consumer debt collectors under Iowa consumer law to pause and consider, before commencing garnishment, the knowledge in their possession about the facts and the law governing those facts. Plaintiffs argue the Iowan rationale in *Hogue* should apply with even more force in Georgia generally, and in this case particularly.

OCGA 18-4-92 does not afford immunity to garnishors or garnishees whose activities were not "reasonably required by a good faith effort to comply" or when the property subjected to garnishment cannot be "reasonably believed to be that of the defendant." OCGA 7-1-812 defines what's "reasonable" for Georgia joint accounts in terms of "clear and convincing evidence." And, the "reasonable" standard here must be read together with strict construction requirements for the garnishment statute.  See *Cook v NC Two LP*, 289 Ga 462, 712 SE$2^d$ 831 (2011),

reversing *Cook v NC Two LP*, 303 Ga App 797 (2010). When judged accordingly, and with the unsophisticated consumer standard, the defendants here acted neither reasonably nor in good faith in the garnishment proceeding: IPI and FH failed to afford Kay and Harold due notice of the garnishment; Altamaha failed to prepare and file a formal written answer.

     Defendants IPI and FH knew significantly more about the account that held Harold's property than they disclose in their briefs to this court.[8] IPI through FH knew it was attaching a joint account in a Georgia chartered bank where OCGA 7-1-812 would likely govern the account and they knew that Harold was listed as its owner. During discovery FH disclosed a document showing that it had received, by subpoena, images of a check drawn against the garnished account. See Exhibit A hereto annexed, labeled "Hanna 0017." IPI and FH knowingly intended to garnish a joint account in Georgia to which Harold's name was annexed as owner. In Georgia's legal environment, in the absence of any clear or convincing evidence showing that the money in the bank account did not belong to Harold,

---

[8] Compare Reply Brief, *p* 7: "IPI and Hanna had nothing more than an unsworn and unsubstantiated letter from Plaintiff Kay Lowery noting that she was "forced to draw social security." And, *p* 10: "When they commenced the garnishment action, Hanna and IPI had no substantiated evidence that no funds in the Lowery's joint checking account would be subject to garnishment . . ."

IPI and FH had no right even to commence garnishment against the joint account *because Harold was not its judgment debtor* and in Georgia garnishment lies, if at all, *in rem* and only against property belonging to a judgment debtor.[9]

IPI and FH had no right when commencing garnishment against property it already knew was owned by unsophisticated, elderly, and infirm consumers in Georgia to rely either upon Altamaha to raise Harold's defenses or Kay's exemptions, or upon an adversarial proceeding in which Harold or Kay might or might not appear to raise those defenses or exemptions – especially where IPI and FH had failed to afford plaintiffs the notice required by the garnishment regime[10]

---

[9] Garnishment proceedings by nature are not adversarial (defendants are represented by the same lawyers); the only rationale for commencing garnishment here, under American constitutional principles in Georgia's legal environment, is the economic calculation and expectation that unsophisticated consumers are more likely than not to ignore, waive, or otherwise sit on their constitutional or consumer rights and that elderly or disabled consumers are more likely than not unable to enforce their constitutional or consumer rights. The failure of financial institutions to protect their clients money in garnishment proceedings is well known to, and expected by, consumer debt collectors, and is the basis for the new federal Treasury Regulation mentioned elsewhere in this litigation. The FDCPA, 1692*f*(1) does not allow IPI and FH to escape liability for *attempting to collect* Harold's property in payment of Kay's judgment merely by dismissing the garnishment action it knew in the first place that it should not have commenced and from which it, accordingly, beat such a hasty retreat.

[10] Strict compliance with the garnishment regime's provisions is required in order to meet standards for reasonableness, good faith, and ordinary care: see

and where, under modern standards, the notice, even if afforded, would not adequately inform Kay about potentially applicable exemptions.

Nor did Altamaha act reasonably in the garnishment. Altamaha's failure to meet its explicit obligations to the public, to the court, and to its own clients by preparing a written answer to the garnishment and filing it with the court should suffice as evidence that its activities did not meet the standard even of ordinary care. Altamaha's failure to prepare and file an answer to the garnishment cannot be described as "reasonable," nor did its failure exemplify "good faith." Rather, the failure reflects the results of a routinized, rote, "knee-jerk" response to serious responsibilities that ordinarily call for careful review and consideration.

Moore's amended affidavit fails, a second time, to explain why Altamaha did not prepare or file its formal written answer[11] and remains more notable for what it fails to disclose than for what it describes. Moore adds to ¶5 that as part of

---

*Cook v NC Two LP*, 289 Ga 462, 712 SE2$^d$ 831 (2011), reversing *Cook v NC Two LP*, 303 Ga App 797 (2010).

[11]*United Merchants & Mfr Inc v Citizens & So Nat'l Bank*, 166 Ga App 468 (1983) stating at 469, and citing *Cale v Eastern Air Lines*, 159 Ga App 630, 284 SE2$^d$ 647 (1981), that a garnishee in possession of assets belonging to its debtor that are not subject to garnishment and who pays them without raising the exemption renders himself liable to the defendant after payment into court.

her responsibilities as "Vice President, Operations" she stays "informed of regulations and laws related to Altamaha Banks' handling of garnishments" – yet *still* offers no explanation for Altamaha's failure to prepare and file the formal written answer the garnishment summons it received and Georgia garnishment law required it to prepare and file.

Paragraph 6 in the original affidavit asserted that Moore investigated the "garnishment giving rise to this action." Plaintiffs, in their motion to strike the original affidavit, pointed out that the original affidavit did not identify any person, document, or other evidence Moore consulted during the investigation and instead restricted her disclosures to her conclusions. The amended ¶6, despite the addition of two new subparagraphs, also fails to identify any person, document, or other evidence Altamaha consulted in 2010. Although the new ¶6 refers to attached documents, Moore does not state that she or anyone else at Altamaha actually consulted these documents as part of the initial 2010 review of the garnishment or in any subsequent investigation. Moore instead pontificates by cherry-picking and spinning her conclusions for litigation purposes.

Notably, Altamaha Bank 0029, attached to the amended affidavit, contains only a single certification for the Taxpayer Identification Number associated with

the account, the "TIN" belonging to Harold. In Georgia, if the bank expected to pay interest to Kay on her funds, the bank would have obtained Kay's TIN certification, but did not. Likewise, on Altamaha Bank 0028 where Harold originally certified that the account would not be subject to back-up withholding, he implied that the money to be placed in the account was his: otherwise, the bank should have, but did not, obtain a similar certification from Kay.

Document 0028, even more significantly, asserts that Harold intended to hold the account with Kay as a Georgia Joint Account under OCGA 7-1-812 – that is, *not as tenants in common*. See upper left corner of 0028, leaving unchecked the box allowing that Harold could hold the account, if so desired, with Kay *as* tenants in common. Also notably, the new deposit details offered in ¶7 to the Moore affidavit reach back to April and May, but ignore deposits in June and the first nine days in July 2010. Compare Ex H-6 to AC on *p* 62-63.

Thus, the affidavit does not explicitly disclose that Moore pulled and read Atlamaha Bank 0028 or 0029 until this litigation. Nor does the affidavit expressly disclose that Moore at any time reviewed deposits to the account made in June or the first nine days in July 2010. The affidavit does not disclose any evidence,

much less clear or convincing evidence, that the money in the account belonged to Kay and not to Harold.

Moore has twice refused, once in her original and again in her amended affidavit, to identify any person or document Altamaha consulted in July or August 2010 in preparing its response to the garnishment it received on 9 July 2010. Having filed no formal answer with the garnishment court, Moore therefore implies that Altamaha simply asked how much money was in the account, pulled the amount requested by the garnishment, and sent it to the court – thus failing to meet its duty of ordinary care and failing to act reasonably and in good faith and depriving itself of the protections from liability described in OCGA 18-4-92(b).[12]

## CONCLUSION

Although commercial debt collectors in Georgia may perhaps abuse garnishment and use it as a discovery tool against commercial debtors, the FDCPA at 1692*f*(1) defines such a collection practice against *consumers* as unconscionable

---

[12]Strict compliance with the garnishment regime's provisions is required in order to meet standards for reasonableness, good faith, and ordinary care: *Cook v NC Two LP*, 289 Ga 462, 712 SE2$^d$ 831 (2011), reversing *Cook v NC Two LP*, 303 Ga App 797 (2010).

or unfair.[13] Georgia law through its FBPA imposes remedies *in addition* to those available under the FDCPA for intentional abuse of Georgia's garnishment regime during consumer debt collection. And, when debt collectors so abuse elderly or disabled consumers, Georgia's UDPTEA imposes additional liabilities. Banks, like Altamaha, who ignore their garnishment responsibilities to the public, to the courts, and to their clients, and who fail to prepare or file a formal written answer to the garnishment summons, face tort liability under wrongful garnishment theories. All three defendants face tort liability for converting Harold's property in a wrongful attempt to collect from Harold to pay for Kay's judgment, since his right to the peaceful enjoyment of his property cannot be said to compete with the rights of creditors and debtors under a garnishment regime that placed his property beyond its scope; Harold and his property should therefore receive protection outside, above, and beyond any balancing of creditor and debtor interests.

---

[13]This case asks neither the plaintiffs nor this court to define the scope of permissible commercial debt collection practices; it asks only to describe the scope of *consumer* debt collection practices in Georgia under the unsophisticated consumer standard.

Respectfully submitted this 6 January 2012 by:

ADDLETON LTD. CO.
by: s/ David F. Addleton
David F. Addleton
*Attorney for plaintiffs*
Georgia Bar Number 005050

355 Cotton Avenue
Macon Georgia 31201
404.797.7166, *voice*
888.398.0898, *fax*
dfaddleton@gmail.com

CHAMBLESS HIGDON RICHARDSON
KATZ & GRIGGS LLP
by:  /s/ Thomas F Richardson
Thomas F. Richardson
*Attorney for plaintiff*
Georgia Bar Number 604325

3920 Arkwright Road Suite 405 (31210)
PO Box 246
Macon, Georgia 31202-0246
478.745.1181, *voice*
478.746.9479, *fax*
trichardson@chrkglaw.com

# CERTIFICATE OF SERVICE

The undersigned certifies that on the 6 January 2012 he electronically filed with the clerk of the court PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT using the CM/ECF system that will automatically send

email notification of the filing, and afford a copy of it to, counsel of record for the

parties as follows:

*Counsel of record for defendants International Portfolio Inc, Frederick J Hanna & Associates PC, and Altamaha Bank & Trust Company:*

Hugh B McNatt
Georgia Bar Number 498300
MCNATT GREENE & PETERSON
Post Office Drawer 1168
Vidalia Georgia 30475-1168
*voice* 912.537.9343
*fax* 912.537.2658
hmcnatt@mcnattandgreene.com

Natalie M C Beasman
Georgia Bar Number 142448
*Pro hac vice*
BALCH & BINGHAM LLP
30 Ivan Allen Jr Blvd NW Suite 700
Atlanta Georgia 30308
*voice* 404.261.6020
*fax* 404.261.3656
nbeasman@balch.com

M Anne Kaufold-Wiggins
Georgia Bar Number 142239
awiggins@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr Blvd NW Suite 700
Atlanta Georgia 30308
*voice* 404.261.3500
*fax* 404.261.3656

*Counsel of record for defendant Altamaha Bank & Trust Company:*

Massie H McIntyre
Georgia Bar Number 494066
MASSIE MCINTYRE PC
116 SW Main Street
Vidalia Georgia 30475-0506
*voice* 912.537.2700
*fax* 912.538.0544
massie@mmcintyrelaw.com

*Counsel of record for plaintiffs Harold Lowery and Kay Lowery:*

David F Addleton
Georgia Bar Number 005050
ADDLETON LTD CO
355 Cotton Avenue
Macon Georgia 31201
*voice* 404.797.7166
*fax* 888.398.0898
dfaddleton@gmail.com

Thomas F Richardson
Georgia Bar Number 604325
CHAMBLESS HIGDON RICHARDSON
KATZ & GRIGGS LLP
3920 Arkwright Road Suite 405 (31210)
PO Box 246
Macon Georgia 31202-0246
*voice* 478.745.1181
*fax* 478.746.9479
trichardson@chrkglaw.com

/s/ David F. Addleton<br>David F. Addleton

*Attorney for plaintiffs*
Georgia Bar Number 005050

ADDLETON LTD. CO.
355 Cotton Avenue
Macon Georgia 31201
404.797.7166, *voice*
888.398.0898, *fax*
dfaddleton@gmail.com